First case today is number 161949 United States v. Travis Windley. Good morning. Good morning Judge Turei, and may it please the court. Mark Quinlivan on behalf of the United States. If I might reserve one minute for rebuttal. You may. Thank you. This case squarely presents the question whether the Massachusetts offense of assault and battery with a dangerous weapon, including the reckless theory of ABDW, qualifies categorically as a violent felony under the Armed Career Criminal Act. For three key reasons, the answer to that question is yes. First and foremost, in Boiseen, the Supreme Court utilized dictionary definitions to interpret the word use in the Lautenberg Amendment and held that that term as commonly understood means the act of employment of force. And the court went on to hold that reckless conduct satisfies that standard, because as compared to accidental or negligent conduct, one who acts recklessly acts with knowledge that a substantial harm to a victim will result. In the court's word, one acts with deliberate knowledge or deliberate intention to endanger another. Second, although the Supreme Court in Leocal said that the term use has to be interpreted in context and in light of surrounding language, we know how the Supreme Court would interpret the word use when followed by the language against the person of another. And we know that because the issue in Leocal was whether a Florida DUI crime qualified as a crime of violence for purposes of 18 U.S.C. section 16A, which defines a crime of violence in part as an offense that involves the use, attempted use, or threatened use of physical force against the person or property of another. And the court held that that term, again, ultimately using the same definition as in U.V.C., requires the act of employment of force and held that accidental or negligent conduct does not satisfy that standard. The court expressly reserved the question, however, whether reckless conduct would satisfy that standard. So in Leocal, when the statute said use of physical force against the person or property of another, the court said that the term use means the act of employment of force and reserved the question whether reckless conduct would satisfy that standard. In Voisin, the court adopting that very same definition, that use requires the act of employment of force, held that reckless conduct satisfies that standard. And third, to close the loop, lest there be any doubt, the Supreme Court in Voisin said that its holding was on all fours with its rationale in Leocal, once again distinguishing between accidental or negligent conduct, which does not arise to the level of the act of employment of force. But, of course, you've got the footnote in Voisin, which convinced Judge Sarris that the question was still an open question. And as best I can tell, the Supreme Court has successfully dodged answering that question and thereby helping the courts of appeals. So we've had the Fifth Circuit and the Eighth Circuit rule in your favor. The court has denied certain of those. Is this issue pending before any other circuit to the government's knowledge right now? I'm not. The only other one I'm aware of is there is a case pending in this circuit, the Bennett case involving a Maine statute. I believe that that case was argued in March of this year. Right, we're aware of it. Now, Maine is a, on recklessness, is a model penal code state. Massachusetts on this question is not. And your opponent says that that makes some difference here. What is your response? I don't think it makes a difference, Judge Lynch, when we're talking about the crime here at issue, which is assault and battery with a dangerous weapon. And I say that because under Massachusetts law, to be convicted of ABDW, one must have actually employed or utilized the dangerous weapon. That distinguishes it from other crimes under Massachusetts law, such as armed robbery or armed assault with the intent to murder, where the dangerous weapon has to be merely possessed. So under Massachusetts law, the reckless theory involves the intentional, a wanton or reckless act with a high degree of likelihood that physical harm will result to another. When that is combined with the crime at issue in this case of ABDW, where the perpetrator has to have employed the dangerous weapon, I don't think that the distinction that my friend has made holds water. Let's take a concrete case. Someone gets in a car, drives it recklessly, fleeing from police, going 100 miles an hour. Voisin teaches us that we could say there is a use there, because the person didn't accidentally use the car. He knew he was using the car, and he knew there were risks. So you've got a use. Here, though, we have to have a use against the person of another. So we get to the issue in Leocal, the formulation in Leocal, which then reserved judgment on whether this, what I just described to you, if reckless was a use against another. How would you say that my driving a car at 100 miles an hour to try to get away from the police, I'm actually using the facts from Massachusetts case, and I go around a corner and lose control of the car and hit another car and injure the people in it? So I have now committed, according to Massachusetts, assault and battery with a deadly weapon, yet I never had any volitional, never had any intention to use force against another. It was a used force, but the against another was accidental. And I think the answer, Judge Keada, is that yes, you're right. One didn't intend to use force against another, but one had to act with the understanding that one's actions would result, or that there would be a high degree of likelihood that physical harm would result. Well, actually, that's not quite true. I think that goes back to Judge Lynch's question. It's true in Maine, but in Massachusetts, the Massachusetts Supreme Judicial Court, I believe, has told us that you need not actually be aware of the risk as long as a reasonable person would be aware of the risk. And I think their words are, if you're too stupid or heedless of the risk, it can still be assault and battery with a deadly weapon, recklessness, because of the deviation from the model penal code. So I don't see what your response to that point is. I'd have to, Judge Keada, I'd have to go back and look at the case that you're referencing. My understanding of Massachusetts law is that it requires a wanton or reckless act where there is a high degree of likelihood that physical harm would result. Yes, you're correct. But wanton act, high degree, but what's the mens rea connection between the person and the awareness of the decree? Under the model penal code, the person needs to be aware of that risk. But under Massachusetts law, as I understand it, the risk needs to simply be one that a reasonable person would be aware of. So they've kind of incorporated a negligence standard into the recklessness determination. So actually, this is quite an interesting question under Massachusetts law, what that 1941 case means. The court was attempting there to distinguish between negligent conduct and intentional conduct. That's actually what the case is about. It's a nightclub fire with resulting deaths, not the Coconut Grove case, but another one. Has the SJC in the years since then provided any greater clarification? It is true that that language is in that 1941 case where the court is basically saying we're not going to allow the defense of, well, they were too stupid to have the intent or too oblivious. I think that's what they meant by heedless. Has there been any development since then in the case law that the government can point to on this point? Judge Lynch, I can't answer your question now, and I'd be happy to submit a letter in answer to the question. I can point out that I will say that when the SJC has spoken about reckless conduct, it has been in general terms, not necessarily specifically to the offense in question, and once again, I think when you add the additional element required for ABDW where one has employed a dangerous weapon in the commission of the crime, that distinguishes it from perhaps some of the more outlying examples of reckless conduct. Okay, I have one other question. You've referred to the Bennett case argued in March. Just suppose hypothetically Bennett finds that recklessness under the Maine statute and the model penal code is not enough to qualify for the force clause. Do you concede that this case then would be governed by that case? You must have thought of this. Yes, and Judge Lynch, I would say that depending on the language, the analysis, I think it's highly likely that Bennett would govern this case. Unless there were something unique to the Maine statute at issue, I think it's highly likely that the Bennett decision will govern. All right, that then gets us to the next question. Why should we decide this if the issue is already in front of the court? It's sort of unseemly to have panels competing to get opinions out. Why would the government have any objection to us just holding this until we see how the Bennett case is resolved? Judge Lynch, I think preliminarily that's a question for the court's internal governance. I ask you. No, I understand, and I would say the only objection I would have is that the question of whether the reckless form of ABDW has been pending now since Johnson 2 was decided, it's been bedeviling the district courts, not just in the District of Massachusetts, but in the surrounding districts as well. The district court in this case noted her frustration that this question has not been settled. But it may well be settled by a different panel in this court. That's right, and I would just note as well that, at least in my experience, I've had both situations. I've had situations where a panel has held its decision pending an earlier. I've also had instances where I've argued this very same issue to a subsequent panel, and it was decided first by the subsequent panel. So I don't think, at least to my knowledge, there's a uniform rule. As I said, I think it's a matter for the court's internal governance. I do think we, and I think this is true for both sides on both the government and the defense bar, that the only concern we would have is that the question of whether this crime qualifies categorically would be potentially further put off. OK, can I ask you to do that? I'd like to ask a question at this point. The what is the government's view? I suspect I know, but I would like to hear your statement on a possible application of rule of lenity in this case. And in this respect, I would like to read to you some language from Johnson, too, which I realize is a residual false case. But the situations are not that dissimilar. The Supreme Court said that this situation calls for a guesswork and intuition is a judicial bias that defies systemic solution is a black hole of confusion and uncertainty that frustrates any effort to impart some sense of order and direction. And is anything but uneven handed, predictable or consistent results. And any attempt to derive meaning from the clause could only be guesswork. Judge Tureso, I would have two answers. First, in Johnson, the court went on, of course, to say that its invalidation of the residual clause did not call into question either the force or the elements clause or the enumerated crimes in the ACCA. And I'm not aware of, and secondarily, I'm not aware of any court that has called into question the force clause on this ground. With the exception, I believe Judge Chioda, in one of your decisions, the distractor was raised of this issue in Tavares. But the second answer, Judge Turea, is this at bottom is a matter of statutory construction. What does the word use of physical force against the person of another in the force clause mean? From our perspective, when you compare and take together the decisions in Leocal and Voicene, which started from the very same common understanding and dictionary definition of the word use, the rule of lenity does not apply because the court, although not explicitly, we believe the court's analysis compels the conclusion that reckless crime would qualify under the force clause as well. Thank you. Judge Leach? I just wanted to ask, please double check on whether this issue is coming up in any of the other circuits and let us know. I will make that inquiry. Judge Leach, I have to say I'm surprised after those first two decisions came out. I've been updating my research, including this morning, to see if any other court of appeals have decided this issue. No, no, I didn't say has decided. I said is it pending. I will get that information to the court. Okay. Following up on Judge Turea's question, may I? On Judge Turea's question, even though we know it's not likely the case, we have to assume that what this fellow did was something like drunk driving and hit someone. It's the odd thing about this whole analysis. But assuming that's what happened, what is it that would lead the government to say that that's what Congress had in mind when it passed ACCA, that that was the conduct that should lead to a 15-year minimum sentence? And, again, I understand that under the categorical approach we don't look at the conduct at issue, but just I'd like to take, for example, one of the defendant's two ABDW convictions, which you can find at paragraph 38. No, but we don't look at the conduct. We have to assume, though, that it was the least conduct, and I think I've just described to you what the circumstances would be of the least conduct, even though I doubt all these ABDW offenses we see are drunk driving offenses. They're probably much more serious, but we don't have to assume that. So why would Congress have wanted the drunk driver who loses control of the car and hits and injures someone, why would that person be in the category of a violent criminal or aggravated felony or the like? I think, Judge Chiara, first off, you have to have three such convictions. So to take the example that the Supreme Court used in Boissin of a husband who hurls a plate at his wife with a high degree of likelihood that he is going to hit and injure her, if he does that once, one would suspect that any sensible person would refrain from that conduct ever occurring again. If he then does it a second and a third time, injuring his wife in each one of those situations, I think that is the kind of person who Congress would have wanted to avoid ever possessing a handgun. So, yes, we are talking about the least culpable conduct. And to take your example, once again, somebody who commits a DUI offense, fleeing from the police and injures somebody causing substantial harm, one would expect that any sensible person would refrain from ever engaging in that conduct again. But if you have at least three of that kind of offense or comparable reckless offenses, I think that is the kind of person that Congress would have intended to not be able to possess a firearm. Thank you. Thank you. Mr. Marks, good morning. Good morning. May it please the Court, Daniel Marks for the appellee, Travis Winley. I would like to just pick up on this conversation right where we left off with the rule of lenity and point out not only has this Court gone way beyond raising the specter of the need for the rule of lenity, but it's characterized this entire jurisprudence as a Rube Goldberg device, which I think Created by the court system, not by Congress. Correct. And I'm glad you made that observation, Judge Lynch, because, of course, the second reason for the rule of lenity, which the Supreme Court has identified, is not only does it err on the side of providing due process required notice for defendants of violating crimes and being sentenced, it also provides a means for courts to signal to Congress, you have drafted an ambiguous statute. So this is a way for the court to say to Congress, if you truly intended drunk driving, the minimum violation of a mass ABDW under the Reckless Clause, to be a predicate offense for the Armed Career Criminal Act, say that more clearly, because it's not fair to us. Can I offer just a counter perspective on that, which is that Congress is acting against the backdrop of how the states have chosen to categorize these crimes. And as for the rule of lenity, I think under the Hayes case and under Esquivel-Quintana, the latest Supreme Court description of the rule of lenity where they refused to apply it, the statute read in context was unambiguous. It only exists where there is a grievous ambiguity or uncertainty in the statute. And because of the courts now taking this categorical approach, your argument would lead to a state which chooses to define these crimes in terms of recklessness, that never qualifying under the ACCA as a violent offense, right? You want us to say recklessness under either the model penal code or under Massachusetts law simply cannot be what Congress had in mind. Well, that's nonsense. Congress knew the states had recklessness in mind. Almost every state has some form of reckless commission of assault and battery with a dangerous weapon. And so I'm not certain that this really is a case in which it's appropriate to apply the rule of lenity. And it would be a sort of excuse. We don't want to have to reach the hard question. So we're going to apply the rule of lenity and avoid it until the Supreme Court is good enough to tell us what all of this means. So let's avoid that excuse. Let's decide the hard question because, in fact, I don't think it's very hard. I think Judge Kayada's hypothetical goes straight to the heart of the flaw in the government's argument here. That once may be, you know, foolishness. But if you don't learn from your foolishness second time and third time, it's a different situation. Because the definition of recklessness that the government depends on in Voisin is an amalgam of the model penal code, main statutory law, and Supreme Court case law. It is not how Massachusetts defines recklessness. Okay. Then let's go back to should we wait for our panel decision. Or you would say even if it comes out holding the main statute does meet the recklessness requirement, the Massachusetts statute does not. Absolutely. I understand that. But suppose they say the main statute does not meet the recklessness requirement. In your view, do you win automatically? In my view, I doubt that's the government's view, however. And I have complete confidence that able lawyers in the appellate group at the Justice Department will come up with an argument why mass reckless ABDW is still an ACCA predicate, even if a main reckless assault is not. So if I could. Perhaps in the new Justice Department, that's correct. Perhaps, which is the world we're now living in. Let me go right to the heart of this question about the hypothetical you've raised, Judge Kayada, and how Massachusetts law defines recklessness. Because it's far broader than how the Supreme Court has identified it in Voisin in a number of respects. Number one, we've already talked a bit about this morning, which is that Massachusetts law, going all the way back to Wilansky, but much more previously in Levesque. Including the model, the jury instructions, right? Absolutely, Your Honor. It makes very clear that in certain circumstances, and Judge Lynch, you already mentioned the phrase, when a defendant is too stupid or heedless to recognize a risk, an objective standard is imported into the recklessness analysis. So it's clear there does not need to be a conscious or deliberate decision to impose a risk to trigger liability under Massachusetts recklessness. We also have this question about is it realistic to think Massachusetts would apply ABDW to somebody who's too stupid? It has, Your Honor. The Levesque case was a case where two drunks who were squatting in a building, in a warehouse in Boston, accidentally kicked over a candle, started a fire, left the building, and then failed to report it to the police. I actually think it was maybe in Worcester. And as a result, firefighters died. They were convicted of involuntary manslaughter on the ground that, although they did not subjectively know someone might die as a result of what they were doing, any reasonable person, they weren't reasonable people, but any reasonable person would have known, and the court affirmed their involuntary manslaughter convictions on that basis, which is a recklessness offense. And reading from that, you think Congress plainly did not intend to encompass that type of crime? I don't think the Supreme Court, the way it is, just defined recklessness. The deliberate decision to disregard a risk matches the Massachusetts definition of recklessness. In other words, an objective reasonableness standard is different. I'll give you another example. Welch, and I'm not sure exactly which case you have in mind, Judge Chiara, I'm sure there's cases about people running from the police at 100 miles an hour. Welch is a case where a guy just tries to peel out of an icy parking lot and accidentally knocks over an officer. The officer isn't injured. So the question on appeal is, how does that work under reckless ABDW in Massachusetts? And the court does a very interesting and detailed analysis of the two different ways you can be convicted of reckless ABDW in Massachusetts. On the one hand, you can intentionally engage in an offensive touching. On the other hand, you can recklessly engage in conduct that causes actual physical harm. Now, the reason why those standards are different, and both pieces of the standards are different, is an effort that in combination they add up to the same level of culpability. So in Welch, the Massachusetts court says very clearly, if there's actual injury, you don't need to have any intent to use force at all. So there is, again, no deliberate decision to use force so long as there's a serious injury. I'm sorry, and he was convicted and it was affirmed? Yes, of Massachusetts reckless ABDW. And was it a jury instruction question? Or a sufficiency question? I believe it was a sufficiency question, Your Honor. Ah. Okay. So now I'm going to give you another example under Massachusetts law. And this, again, gets to the issue of driving recklessly, or we could play the same game with the government's hypothetical of shooting a gun into a crowd. There's a long line of case law in Massachusetts going all the way back to the beginning of the last century that reckless driving in Massachusetts, which of course can be a form of ABDW because a car can be a deadly weapon, you can be convicted of reckless driving in Massachusetts driving on an empty road. And that's because recklessness in Massachusetts can include the deliberate decision to create a generalized danger. Not a danger to any particular person. No accident needs to happen. There doesn't need to be anyone around. I'm sorry, are you saying this doesn't meet the use clause because there's no person on the road? Use against a person. Absolutely, Your Honor. So this is yet another way that Massachusetts law differs from the Supreme Court's definition in Boisean and the statutory language in the ACCA. Okay, that's different than a mens rea. Correct, Your Honor. And I should have flagged for you that that was yet a different reason. So both with regard to mens rea, the objective standard, it being important to Massachusetts law, and this sort of funky difference between whether you intentionally engage in conduct or recklessly engage in conduct, which is the Welch case, as well as this issue of whether you're endangering another person. So it's not required under Massachusetts law. Could you go back to the government's argument? I think the government has made an argument here that even if you assume that a single ABDW conviction in Massachusetts was not a conviction for a crime of violence because it could have been reckless, but once you've racked up three, we then stop worrying about that somehow. What's your response to that argument? I just don't think there's any indication in the text or the structure of the ACCA to indicate that even repeated reckless conduct should trigger a 15-year minimum mandatory sentence. Under the Seventh Amendment, would it even be constitutional to retrospectively redefine the first offense, the first conviction, based on the fact that there were subsequent convictions? I may be back making that argument, Your Honor, in the future if necessary. But, no, I mean, I think that's an excellent question. I don't think the courts have confronted it. But when you step back, and this court did. The Seventh Amendment doesn't apply to the states to the extent Congress is piggybacking on the state crime. Well, it's an inventive argument. It may have some lengths. I don't know. It's not really before us. We agree about that. But I think the basic point is this court, it's hard to imagine this court saying it more often in White, in Booker, in the decision of Wazin, which the Supreme Court echoed. Actually, it didn't. In some ways, I wish they'd used my reasoning. We have an easier time of it if they just followed Judge Lynch's opinion. In the sense that context matters here and that there is an indication in the structure of the statute that in the and to capture recklessness offenses in extending federal gun control prohibitions to even domestic abusers who engage in domestic violence, which includes all sorts of conduct not typically considered a violent felony. But with the ACCA, like with Section 16, the point is to impose extra penalties. In this case, incredibly severe penalties, 15 years in prison for the worst of the worst armed career criminals. So I think to answer your question directly, Judge Kayada, I don't think there's any indication in the statute, in its language or its structure, that Congress intended to penalize in this way even repeated reckless offenders. Thank you. Your time is up. If I may take a moment just to clarify the point I was trying to make, Judge Kayada, I was not arguing that you look at subsequent acts to redefine the first. I was simply answering your question, is this the kind of crime that Congress envisioned when it passed the ACCA? And making the point that the ACCA requires three such crimes. So if you look at the fact that a defendant taking the least culpable conduct would have been convicted of three such crimes, the answer to the question is yes. I'm not at all suggesting that. Right, that's a fair point. But that would suggest that if we had the exact same language that we have in the statute, only it said one instead of three, which I think you can probably have in some settings, then you'd have a different answer. I don't. Well, I don't think I had a different answer. Well, but your rationale would imply that. That rationale, I agree. I agree. But, of course, we wouldn't be talking about a 15-year mandatory minimum in that instance. Thank you.